IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**UNITED STATE OF AMERICA,**

        **Plaintiff,**

   vs.                                               Civil Action 2:12-cv-754
                                                           Magistrate Judge King

**JEFFREY MARABLE, MD,**

        **Defendant.**

OPINION AND ORDER

This matter is before the Court, with the consent of the parties pursuant to 28 U.S.C. § 636(c), upon *Plaintiff United States of America's Motion for Summary Judgment* ("*Plaintiff's Motion for Summary Judgment*"), Doc. No. 12, the response of defendant Jeffrey Marable, M.D., *Defendant's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment* ("*Defendant's Response*"), Doc. No. 13, and plaintiff's reply, *Plaintiff United States of America's Reply to Its Motion for Summary Judgment* ("*Plaintiff's Reply*"), Doc. No. 14. For the reasons that follow, *Plaintiff's Motion for Summary Judgment* is **GRANTED**.

**I.    Background**

Defendant attended medical school from 1986 to 1990 and took out various loans, including Government-insured Health Education Assistance Loans ("HEAL") to pay for his schooling. *Affidavit of Jeffrey Marable, M.D.* ("*Marable Affidavit*"), attached to *Defendant's Response* as Exhibit A, at ¶¶ 3-4. On February 21, 1995, defendant executed a Sallie Mae HEAL Relief Promissory Note in the principal

1

amount of $94,566.33 (the "HEAL Note") to consolidate six education loans under the Federal HEAL Consolidation Program. *See Complaint*, Doc. No. 2, ¶ 3, Exhibit A; *Answer*, Doc. No. 6, ¶ 3.

Defendant made payments on the HEAL Note until January 5, 2005, at which time he filed a petition for bankruptcy relief under Chapter 13 of the Bankruptcy Code. *Marable Affidavit*, ¶ 6. Sallie Mae filed a Proof of Claim in the amount of $75,774.34 in connection with a student loan or loans. *Id*. at ¶¶ 7-8; *Proof of Claim*, attached to *Defendant's Response* as Exhibit A-2. Defendant's bankruptcy was discharged on May 24, 2010 but the HEAL Note was not discharged in the bankruptcy. *Certificate of Indebtedness*, attached to *Complaint* as Exhibit B, at pp. 1-2.

Due to the bankruptcy, Sallie Mae filed an insurance claim with the Department of Health and Human Services ("HHS") in the amount of $75,891. *Id*. Sallie Mae's claim was paid on February 10, 2005 and the HEAL Note was assigned to HHS. *Id*. HHS notified defendant by letter dated February 18, 2005 that Sallie Mae had submitted an insurance claim and had assigned the HEAL Note to the United States Government. *Id*.

In a letter dated May 25, 2010, HHS provided defendant with instructions for entering into a repayment agreement. *Id*. In a letter dated January 21, 2011, HHS notified defendant that, unless defendant submitted a written response, repayment agreement, or payment in full within sixty days, HHS would refer the HEAL Note to other federal agencies for the purpose of administrative offset under

the Debt Collection Improvement Act of 1996.  *Id*.  In a letter dated January 29, 2011, HHS notified defendant that the HEAL Note had been referred for collection and advised defendant that, unless he remitted payment in full or entered into a repayment agreement, the HEAL Note would be referred to the United States Department of Justice ("DOJ"). *Id*.  Defendant was again notified on April 25, 2012 that the HEAL Note would be referred to the DOJ unless he entered into a repayment agreement within sixty days.  *Id*.  Defendant did not comply with any of these requests.  *Id*.

Plaintiff United States of America filed this action on August 20, 2012, on behalf of HHS, seeking recovery of principal and interest allegedly due on the HEAL Note.  Plaintiff now seeks an order granting it summary judgment in the amount of $108,860.04, that amount reflecting $107,597.97 in principal and $1,262.07 in interest accrued through June 27, 2012, plus additional interest on the principal balance from June 27, 2012 to the date of judgment at the rate of 3.125 percent per annum.  *Plaintiff's Motion for Summary Judgment*, p. 4.

**II.  Standard**

The standard for summary judgment is well established.  This standard is found in Rule 56 of the Federal Rules of Civil Procedure, which provides in pertinent part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Pursuant to Rule 56(a), summary

judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id*. In making this determination, the evidence "must be viewed in the light most favorable" to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, summary judgment is appropriate if the opposing party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "mere existence of a scintilla of evidence in support of the [opposing party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [opposing party]." *Anderson*, 477 U.S. at 252.

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). "Once the moving party has proved that no material facts exist, the non-moving party must do more than raise a

metaphysical or conjectural doubt about issues requiring resolution at trial." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

### III. Discussion

The Government filed this action to recover amounts allegedly due on the HEAL Note. To recover on a promissory note, the Government must "make a *prima facie* showing that "(1) the defendant signed it, (2) the government is the present owner or holder and (3) the note is in default." *United States v. Petroff-Kline*, 557 F.3d 285, 290 (6th Cir. 2009) (citing *United States v. MacDonald*, No. 93-1924, 1994 WL 194248, at *2 (6th Cir. May 16, 1994)). "For that purpose the government may introduce evidence of the note and a sworn transcript of the account or certificate of indebtedness." *Id*. (citing *United States v. Davis*, 28 F. App'x 502, 503 (6th Cir. 2002)). "Once such a *prima facie* case is established, defendant has the burden of proving the nonexistence, extinguishment or variance in payment of the obligation." *Id*. (citing *Davis*, 28 F. App'x at 503).

In the case presently before the Court, the Government has established a *prima facie* case by attaching to the *Complaint* a copy of the HEAL Note signed by defendant and a *Certificate of Indebtedness* signed under penalty of perjury by Barry Blum, the Chief of the Referral Control Section of the Debt Management Branch of HHS. The *Certificate of Indebtedness* provides, *inter alia*, that HHS was assigned the HEAL Note from Sallie Mae in February 2005, that

5

defendant has not entered into a repayment agreement with HHS since the HEAL Note was assigned, and that HHS has declared the entire HEAL Note due and payable because of defendant's "lack of cooperation" in "establishing an acceptable repayment schedule." *See Certificate of Indebtedness*, pp. 1-2. According to the *Certificate of Indebtedness*, the total debt due on the HEAL Note as of June 26, 2012 is $108,860.04, consisting of $107,597.87 in principal and $1,262.07 in interest. *Id*.

Because the Government has established its *prima facie* case, the burden shifts to defendant to "prov[e] the nonexistence, extinguishment or variance in payment of the obligation." *Petroff-Kline*, 557 F.3d at 290. Defendant admits that he signed the HEAL Note, *Complaint*, Doc. No. 2, ¶ 3, Exhibit A; *Answer*, Doc. No. 6, ¶ 3, and he does not contest that the Government is the present holder of the HEAL Note. Instead, defendant argues that there is a genuine issue of material fact as to whether he is in default and, if found to be in default, what amount is due under the HEAL Note.

Defendant avers that, after the 2010 "bankruptcy discharge, [he] received monthly statements from Sallie Mae on the [HEAL] Loan, and made payments according to the statements." *Marable Affidavit*, ¶ 9. Defendant also avers that Sallie Mae placed the Loan in forbearance in March 2011 and that it remains in forbearance. *Id*. at ¶¶ 11-12. In further support of his position, defendant has submitted the transaction history for a Sallie Mae account that details payment and capitalized interest transactions from June 1990 through December 2012

6

(the "Sallie Mae Statement").[1]  *Defendant's Response*, Exhibit A-1. Defendant has also submitted a statement from HHS detailing activity on the HEAL Note from July 1995 through June 2012 (the "HHS Statement").  *Id.* at Exhibit B-1.

As defendant argues, the Sallie Mae Statement and the HHS Statement reflect nearly identical payments from 1995 through January 2005.  The statements differ after January 2005.  The HHS Statement reflects that defendant last made a payment on January 18, 2005 and that two "lender refund payments" were made in March 2005.  *Id*. at pp. 1, 26.  The Sallie Mae Statement reflects that defendant made four additional payments in 2005 and seven payments between September 2010 and March 2011, at which time interest began to capitalize on the loan quarterly.  *Defendant's Response*, Exhibit A-1, pp. 2-3.  Defendant avers that the additional payments reflected in the Sallie Mae Statement were made on the HEAL Note and paid to Sallie Mae.  *Marable Affidavit*, ¶ 9.

Defendant's affidavit and the Sallie Mae Statement are insufficient to show that there is a disputed issue of fact with regard to the "nonexistence, extinguishment or variance in payment of the obligation."  *See Petroff-Kline*, 557 F.3d at 290.  Defendant has provided evidence that he made payments on a loan to Sallie Mae after his 2010 bankruptcy discharge.  However, Sallie Mae assigned the HEAL Note to HHS on February 10, 2005 and notified defendant by letter

---

[1] The Sallie Mae Statement provides, *inter alia*, the amount of each payment that was applied to principal, but it does not indicate the original or outstanding principal balance of the account.

7

dated February 18, 2005 that Sallie Mae had submitted an insurance claim and had assigned the HEAL Note to the United States Government. *Certificate of Indebtedness*, pp. 1-2. There is no evidence that defendant made any payments to HHS on the HEAL Note after the February 2005 assignment or that defendant did not receive notice of the assignment.[2]

Defendant also avers that Sallie Mae placed the HEAL Note in forbearance in March 2011 and that, as of April 18, 2013, it remains in forbearance. *Marable Affidavit*, ¶¶ 11-12. In support of this assertion, defendant has provided a Sallie Mae statement, dated March 1, 2013, indicating that a loan with a principal balance of $60,331.12 is in forbearance status. *Defendant's Response*, Exhibit A-3. It is clear to this Court, however, that the loan referred to in the March 1, 2013 Sallie Mae statement is not the HEAL Note.

First, the origination date and original loan amount of the loan referred to in the March 1, 2013 Sallie Mae statement differs from that of the HEAL Note. Significantly, the March 1, 2013 Sallie Mae statement provided by defendant does not include the loan account number or the second page of the statement, which would include the "loan level breakdown of the" totals listed on the first page. On the

---

[2] Defendant avers that he "never received a statement from the United States Department of Health and Human Services." *Marable Affidavit*, ¶ 10. However, that averment is insufficient to create a genuine issue of material fact as to whether defendant received notice of the assignment. It is clear from defendant's affidavit that the "statement" he is referring to is a monthly billing statement and not a letter notifying him of the assignment. *See id*. at ¶¶ 9 ("After my bankruptcy discharge, I received monthly statements from Sallie Mae on the [HEAL] Loan, and made payments according to the statements."), 10 ("I have never received a statement from [the] United States Department of Health and Human Services.").

8

other hand, the Government has provided a Sallie Mae statement, dated September 2, 2012, for what appears to be the same loan addressed in the March 1, 2013 Sallie Mae statement provided by defendant.[3] The second page of that statement indicates that the loan originated on September 8, 1994 in the amount of $63,207.05. *Plaintiff's Reply*, Exhibit C. The HEAL Note, however, originated in February 1995 in the amount of $94,566.33. *See Complaint*, Doc. No. 2, ¶ 3, Exhibit A; *Answer*, Doc. No. 6, ¶ 3.

Second, the principal balance of $60,331.12 listed on the March 1, 2013 Sallie Mae statement provided by defendant differs significantly from that of the HEAL Note. Sallie Mae's January 24, 2005 Proof of Claim relating to the HEAL Note, filed in defendant's original bankruptcy proceeding, was in the amount of $75,774.34. *Marable Affidavit*, ¶¶ 7-8; *Proof of Claim*, attached to *Defendant's Response* as Exhibit A-2. The sum of the payments and capitalized interest transactions that defendant represents occurred between January 2005 and December 2012, *i.e.*, the transactions reflected on the Sallie Mae Statement, would result in a net increase in the principal amount of the HEAL Note since January 2005. However, defendant now argues that a loan with a principal balance of less than

---

[3] The Court's own review of the September 2, 2012 statement provided by the Government, the March 1, 2013 statement provided by defendant, and the Sallie Mae Statement confirms that the statement provided by the Government is for the same loan represented in the March 1, 2013 statement provided by defendant. The outstanding balance on the March 1, 2013 statement is $60,331.12. That total, reduced by the interest capitalized on the Sallie Mae Statement on September 30, 2012 ($1,307.56), October 29, 2012 ($421.51), and December 31, 2012 ($922.24), would result in a total of $57,679.81. That figure is the principal balance as of September 2, 2012 listed on the statement provided by the Government.

9

eighty percent of the amount of the January 2005 Proof of Claim is the HEAL Note. This cannot be.

Finally, Sallie Mae assigned the HEAL Note to HHS on February 10, 2005. *Certificate of Indebtedness*, at pp. 1-2. Because it no longer owned or held the HEAL Note, Sallie Mae could not legally place the note in forbearance in March 2011, as defendant contends. *See Marable Affidavit*, ¶¶ 11-12.

Considering the discrepancies in the outstanding principal balances, origination dates, and original loan amounts, and the fact that Sallie Mae did not own or hold the HEAL Note at the time defendant contends Sallie Mae placed it in forbearance, a reasonable jury could not find that the March 1, 2013 Sallie Mae statement, and thus, defendant's related averments, *see Marable Affidavit*, ¶¶ 11-12 (referencing the March 1, 2013 Sallie Mae statement), are evidence that the HEAL Note is in forbearance.

Defendant also contests the amount due on the HEAL Note. *See Defendant's Response*, pp. 4-5. Defendant argues that the principal balance of the HEAL Note represented in the *Certificate of Indebtedness* is incorrect because it is higher than the original loan amount in 1995, even though defendant made $82,011.43 in payments between 1995 and 2005. *Id*. In support of this argument, defendant again refers to the March 1, 2013 Sallie Mae statement, which shows a loan balance of $60,331.12. *Id*.

As discussed *supra*, defendant has offered no evidence that he made payments on the HEAL Note to HHS after the February 2005

10

assignment, and the March 1, 2013 Sallie Mae statement upon which defendant relies reflects the balance due on a note other than the HEAL Note. Although defendant argues that the HEAL Note has an outstanding amount less than the $108,860.04 reflected in the *Certificate of Indebtedness*, defendant has offered no evidence of payment by him on the HEAL Note that was not properly credited, nor has he presented evidence of error in the *Certificate of Indebtedness*.

Accordingly, the Court concludes that plaintiff has established a *prima facie* case to recover on the HEAL Note and that defendant has failed to create a genuine issue of material fact as to "the nonexistence, extinguishment or variance in payment of the obligation." *See Petroff-Kline*, 557 F.3d at 290. Plaintiff is therefore entitled to summary judgment as a matter of law.

*Plaintiff's Motion for Summary Judgement*, Doc. No. 12, is therefore **GRANTED**.

Plaintiff is **AWARDED** damages consisting of $107,597.97 in principal and $1,262.07 in interest accrued through June 27, 2012, and $5,812.87 in additional interest on the principal balance from June 27, 2012 to the date of judgment at the rate of 3.125 percent per annum,[4] **for a total award of $114,672.91.**

The Clerk shall enter **FINAL JUDGMENT** accordingly.

March 21, 2014                                     *s/Norah McCann King*
                                                    Norah M$^c$Cann King
                                          United States Magistrate Judge

---

[4] $107,597.97 * 3.125% * 631 (the number of days from June 28, 2012 through March 21, 2014) ÷ 365 = $5,812.87.